Mikeisha BLACKMAN,
et al., Plaintiffs,

v.

DISTRICT OF COLUMBIA,
et al., Defendants.

No. CIV.A. 97–1629(PLF).

United States District Court,
District of Columbia.

Aug. 1, 2003.

Laura N. Rinaldi, Matthew I. Fraidin, The Children's Law Center, Washington, for Plaintiffs.

Robert Utiger, Assist. Corporation Counsel, Washington, for Defendants.

### MEMORANDUM OPINION AND ORDER

PAUL L. FRIEDMAN, District Judge.

On April 2, 2003, plaintiff Brenda Scott filed a motion for a preliminary injunction on behalf of her son Tony Scott. The Court referred the matter to the Special Master pursuant to the Court's February 12, 1997 Order of Reference. *See* Order of Reference, *Blackman v. District of Columbia,* Civil Action No. 97–1629 (D.D.C. Feb. 12, 1997). The Special Master issued a report and recommendation concerning Tony on April 28, 2003 ("Report"). Plaintiffs responded on May 12, 2003 pursuant to Rule 53 of the Federal Rules of Civil Procedure. *See* FED. R. CIV. P. 53(e)(2). Defendants did not file a response to the Special Master's Report.

In her Report, the Special Master found that in 1999 when Tony was six years old, his first grade teacher recommended a special education evaluation. *See* Report at 1–2. No evaluation took place and Tony began the first grade again in September 2000 and yet again in September 2001. *See id.* at 2. By November 2001 Tony was

eight years old and still in the first. grade. *See id.* After having failed for over two years to provide Tony with the special education evaluation recommended by his first grade teacher, the District of Columbia Public Schools ("DCPS") finally developed an Individualized Education Program ("IEP") for Tony on December 17, 2001. It provided for ten hours of specialized instruction. *See* Report at 2. The Scotts objected to the IEP.

The next year the Scotts moved, and Tony entered a new public school, Savoy Elementary School, where he was placed in the fourth grade. *See* Report at 2. Despite a parental request, an IEP meeting was not scheduled at the new school until December 18, 2002. An IEP was not developed at that time, however, because DCPS personnel failed to attend the IEP meeting. *See id.* On January 3, 2003, plaintiffs requested mediation and a due process hearing. In the meantime, on February 25, 2003, Tony's school developed an IEP that stated that Tony required full time special education placement and that a placement at J.O. Wilson Elementary was appropriate. *See id.* at 3. Tony's mother objected to this placement, noting that Tony was then ten years old "and function[ing] on a first grade cognitive level." *Id.* at 3.

On March 4, 2003, a due process hearing was held, and a hearing officer determination ("HOD") was issued on March 20, 2003. In the HOD, the hearing officer concluded that neither Tony's current school nor J.O. Wilson Elementary was an appropriate placement. *See* Report at 3 (citing the March 20, 2003 Hearing Officer Determination). In light of DCPS's assurances that it had multiple schools available to fit Tony's needs, the hearing officer ordered: (1) that DCPS immediately place Tony in an appropriate full-time special education program; (2) that if DCPS could

not provide an appropriate public school placement immediately, DCPS would be required to pay for a private placement; (3) that DCPS immediately convene a multidisciplinary team ("MDT")/IEP meeting within five days of the HOD to reevaluate Tony that included members from his new placement school; and (4) that the MDT/IEP provide for three years of compensatory education to compensate for the three years Tony was without the special education that he required. *See id.* DCPS did not implement the HOD, did not seek reconsideration of the hearing officer's decision, and did not appeal the officer's determination. Plaintiffs then filed their motion for a preliminary injunction.

At the meeting before the Special Master, DCPS raised the same issues it had raised at the due process hearing, namely that J.O. Wilson Elementary was an appropriate placement for Tony and that it also had other programs it thought were appropriate. *See* Report at 5. The Special Master rejected this argument, concluding that if that were the case it was incumbant on DCPS to have issued a notice of placement within the five days mandated by the hearing office or to have requested reconsideration of the HOD through the established review procedures. In the absence of a request for reconsideration or the filing of an appeal, DCPS was bound by the hearing officer's findings. *See id.* at 5–6. The Special Master then concluded that plaintiffs have met all four requirements for emergency injunctive relief. *See id.* at 7–8. Of utmost importance in the calculus was the fact that the failure of DCPS to provide an adequate placement for Tony as required by the HOD continues to place Tony at risk. The hearing officer had determined that Tony needs full-time special education services and that his presence at his current school has resulted in significant safety concerns both

for himself and for some of his classmates. *See id.* at 7.

On the issue of remedy, the Special Master concluded that Tony's immediate placement at a private provider was not necessary in light of DCPS's assurances that it had other appropriate placements available. She therefore recommended that the Court grant plaintiffs' motion for a preliminary injunction and order DCPS to issue a notice of placement for Tony within five days from the date of the Court's Order. *See id.* at 8–9.

In their response to the Special Master's Report, plaintiffs endorse her recommendation that injunctive relief be granted, but object to the relief proposed. Plaintiffs argue that proper implementation of the HOD requires Tony's immediate placement in a private facility. *See* Plaintiff's Response to the Special Master ("Pls.' Resp.") at 3. Specifically, plaintiffs assert that the HOD implicitly directed placement within five days of the decision's issuance because the HOD explicitly required the convening of an IEP meeting with members from Tony's new placement school within five days from the date of the decision—that is by March 25, 2003. *See id.* at 2–3. Plaintiffs maintain that because DCPS failed immediately to find an appropriate placement within DCPS or to appeal the HOD, it must be ordered to fund Tony in a private facility in light of the irreparable harm that has been and is being caused to Tony on a daily basis. *See id.*[1]

The Court is persuaded by plaintiffs' response. It is now August 1, 2003, and nearly six months have elapsed since the hearing officer issued his decision. Tony is ten years old. In 1999, when Tony was six, his teacher recommended a special education evaluation. An IEP was not pro-vided at that time or during the course of the following four years. When an IEP meeting was scheduled for December 2002, DCPS personnel failed to attend. After an IEP finally was developed after a hearing in February 2003 and Tony's mother found it unacceptable, a due process hearing was held. When DCPS received a decision it now says it did not like, it failed to seek reconsideration or exercise its statutory right to appeal. *See* 20 U.S.C. 1415(g), (i)(1)(A); *see also* 34 C.F.R. §§ 510(a), 511. When the Court's Special Master issued a Report and Recommendation, counsel for DCPS failed to object or otherwise express its views. As this record shows, in the four years Tony's mother has pursued an appropriate placement for her son, DCPS has demonstrated nothing but disregard for Tony's rights and has failed to provide him with the education to which he legally is entitled. Furthermore, by not filing a response to the Special Master's Report, DCPS effectively has consented to the proposed relief recommended by the Special Master, but still has failed to place Tony as the hearing officer directed. As a result, additional months have passed without a placement for a child who was to receive *immediate* relief.

The conduct of DCPS in this case is unconscionable. Not only has it disregarded the requirements of federal law and regulations and a decision of its own administrative hearing officer, its conduct has threatened the physical and emotional health and safety of a child. Tony began the odyssey through the DCPS special education maze when he was six years old and in the first grade. The delay in Tony's placement simply is not tenable in the life a young child who has been denied a free and appropriate education for so

---

1. Plaintiffs indicate that Tony has been accepted into The Ivymount School, a private provider that plaintiffs feel adequately meets Tony's needs. *See* Pls.' Resp. at 3.

long. As the Court previously has noted in this action:

[T]he failure of the District to comply with its statutory obligations and provide appropriate educational placements can have a devastating impact on a child's well-being. "Any agency whose appointed mission is to provide for the education and welfare of children fails that mission when it loses sight of the fact that, to a young, growing person, time is critical. While a month in the life of an adult may be insignificant, at the rate at which a child develops and changes, especially one at the onset of biological adolescence with or without special needs like those of our plaintiff, a few months can make a world of difference in the life of that child."

*Blackman v. District of Columbia,* 185 F.R.D. 4, 7–8 (D.D.C.1999) (quoting *Foster v. District of Columbia,* Civil Action No. 82–0095, Memorandum Opinion and Order of February 22, 1982 at 4 (D.D.C. Feb. 22, 1982)). DCPS's disregard of both the rights and the educational health of this child is simply inexcusable.

Having failed to object to the March 20, 2003 HOD, to seek reconsideration of the decision or to exercise its statutory right to appeal, DCPS must implement the hearing officer's determinations and must do so immediately. Having failed to place Tony in an available public school with the appropriate special education program within five days of the HOD, DCPS must issue a notice of placement for Tony Scott with a private provider and fund his placement. *See Wirta v. District of Columbia,* 859 F.Supp. 1, 5 (D.D.C.1994) ("Where a public school system has defaulted on its obligations under the IDEA, a private school placement is 'proper under the Act' if the education by said school is 'reasonably calculated to enable the child to receive educational benefits.'") (quoting *Board of Education of Hendrick Hudson Central District School v. Rowley,* 458 U.S. 176, 207, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982)). Accordingly, it is hereby

ORDERED that the Special Master's Report and Recommendation is ADOPTED in part and REJECTED in part; it is

FURTHER ORDERED that the Motion for Preliminary Injunction filed by Brenda Scott [1117–1] is GRANTED; it is

FURTHER ORDERED the District of Columbia Public Schools shall issue on or before August 7, 2003 a Notice of Placement placing Tony Scott at the Ivymount School in Rockville, MD and shall pay for that private placement; it is

FURTHER ORDERED that on or before August 14, 2003, DCPS shall convene an MDT/IEP meeting to reevaluate Tony Scott for all suspected disabilities. The evaluation team shall include representative members from the Ivymount School; it is

FURTHER ORDERED that the MDT/IEP team shall consider compensatory education and determine the form and amount of compensatory education to which Tony Scott is entitled, not to exceed three years; it is

FURTHER ORDERED that in order to monitor the timely implementation of this Order, the parties shall furnish to the Special Master by the date requested any documentation and information she requests, in the form in which it is requested; and it is

FURTHER ORDERED that upon a showing that defendants have failed to comply with any of the provisions of this Order, the defendants may be fined up to $5000 per day for each such instance.

SO ORDERED.