# 2007 DTA 106

**TRIBUNAL DE APELACIONES
REGIÓN JUDICIAL DE SAN JUAN
PANEL ESPECIAL**

W. B. B.
Recurrido

V.

DEPARTAMENTO DE EDUCACIÓN
Recurrente

Núm. KLRA-2007-00479

San Juan, Puerto Rico, a 21de agosto de 2007

Panel integrado por su Presidenta, la Juez Coll Martí,
y los Jueces Vizcarrondo Irizarry y Cortés Trigo

Cortés Trigo, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Comparece ante nos el Departamento de Educación (Departamento) solicitando la revisión de una resolución dictada y notificada el 26 de abril de 2007 (Resolución) por el Honorable Carlos J. Pérez Pérez, Juez Administrativo de Educación Especial (Juez Administrativo). Mediante esta decisión se declaró ha lugar la querella presentada por el recurrido W.B.B. y se ordenó al Departamento comprar al Instituto Modelo de Enseñanza Individualizada (IMEI), una escuela privada, servicios de educación especial y servicios de apoyo (terapias) para el menor querellante y reembolsarle los gastos en los cuales incurrió en IMEI desde que presentó la querella. Por las razones que expresamos a continuación, confirmamos la Resolución recurrida.

### I

W.B.B. nació el 23 de septiembre de 1993 y fue registrado en el Programa de Educación Especial del Departamento el 28 de octubre de 1999 en el Distrito Escolar San Juan II mientras cursaba el kindergarten en la Escuela Julio Sellés Solá de dicho distrito escolar. Fue referido por problemas específicos de aprendizaje y déficit de atención con hiperactividad. W.B.B. tiene un nivel de funcionamiento intelectual promedio según los resultados de una prueba de inteligencia Weschler administrada el 19 de agosto de 2002, por lo que tiene el potencial de pasar de grado y avanzar en el sistema escolar. En el 2003 se le diagnosticó autismo.

El 25 de agosto de 2003 se determinó que W.B.B. era elegible para el Programa de Educación Especial bajo la categoría de autismo. El 7 de febrero de 2005 se hizo una nueva determinación de elegibilidad para dicho programa bajo la categoría de Problemas Específicos de Aprendizaje. La Sra. Janette Bruckman (Sra. Bruckman), madre de W.B.B., recibió el documento titulado Carta de Derechos de los Padres los días 28 de octubre de 1999, 28 de agosto de 2001, 25 de abril de 2002 y 13 de mayo de 2005.

El 11 de marzo de 2005, el Comité de Planificación y Ubicación (COMPU) se reunió en la Escuela Julio Sellés Solá para revisar el programa educativo individualizado (PEI) de W.B.B. Durante la reunión, el Sr. José Landaeta Monroig (Sr. Landaeta), maestro de educación especial de la Escuela Julio Sellés Solá y de W.B.B., recomendó un cambio de ubicación para éste y sugirió un salón especial en escuela regular, ya que iba a fracasar por segunda ocasión el cuarto grado.

Los peritos de W.B.B. -la Sra. María Margarita Oliver (Sra. Oliver), patóloga del habla y lenguaje, y la Dra. Hipólita García (Dra. García), sicóloga clínica-, plantearon que la alternativa de ubicación que mejor satisfacía

las necesidades de W.B.B. era un grupo regular de un máximo de ocho estudiantes con enseñanza individualizada, servicios integrados relacionados y promoción de grado. Además, recomendaron terapias ocupacional y del habla y lenguaje integradas al proceso educativo.

El 13 de mayo de 2005 se celebró otra reunión de COMPU para continuar con la revisión del PEI de W.B.B. En ésta, el equipo escolar recomendó las Escuelas José Rivera Solís y Arturo Somohano del Distrito Escolar de San Juan II como posibles alternativas de ubicación. Se recomendó *"salón especial a tiempo completo en escuela regular"* y se le indicó a la Sra. Bruckman que las dos escuelas tenían salón especial a tiempo completo de problemas específicos de aprendizaje, pero no tenían promoción de grado.

El 13 de mayo de 2005, la Sra. Bruckman visitó la Escuela Arturo Somohano acompañada por la Sra. Oliver. Según ésta, dicha escuela no era apropiada para el estudiante porque no había servicios de terapia ocupacional o del habla, las edades de los estudiantes del grupo que se le ofreció fluctuaban entre 6 y 13 años, sólo se ofrecían las materias de lectura, escritura y matemáticas, el currículo no incluia todas las materias del currículo regular del Departamento, no se enseñaba inglés, no había equipo asistido y a los estudiantes no se les daba la oportunidad de pasar de grado.

El 24 de mayo de 2005 se celebró una reunión de COMPU en la cual se le dio a la Sra. Bruckman información sobre la Escuela José Rivera Solís. Se acordó que para agosto de 2005 se culminaría la revisión del PEI. También se estableció que al comenzar el nuevo año escolar, en agosto de 2005, W.B.B. debía reportarse a su grupo de cuarto grado regular en la Escuela Julio Sellés Solá.

A esa fecha, ya W.B.B. había cursado dos años el cuarto grado regular y fracasado, por lo que se le ofreció un cambió de ubicación. W.B.B. se resistía a asistir a la escuela, presentaba problemas de conducta, apenas podía escribir su nombre y por su problema de dislexia no podía leer. Al comenzar el año escolar 2005-2006 no regresó a la Escuela Julio Sellés Solá.

El 25 de agosto de 2005 se llevó a cabo una reunión de COMPU en la Escuela Julio Sellés Solá, en la cual la Sra. Bruckman informó que lo había matriculado en IMEI. Antes de matricularlo en IMEI, la Sra. Bruckman no le notificó al distrito escolar de San Juan II. Durante el año escolar 2005-2006, W.B.B. estuvo matriculado en IMEI.

El 28 de octubre de 2005, la Dra. García y la Sra. Bruckman visitaron la Escuela José Rivera Solís. Ésta fue rechazada por la Dra. García como posible alternativa de ubicación para W.B.B. por varias razones: la composición del grupo que se ofreció era muy variada en términos de impedimentos allí representados, el funcionamiento de los estudiantes estaba muy por debajo del de W.B.B., no había materiales, ni equipo para la enseñanza de los estudiantes con las necesidades del menor, a los estudiantes no se les otorgaban notas, ni se les promovía de grado. La Sra. Bruckman entendía que las alternativas de ubicación ofrecidas por el Departamento no eran apropiadas para W.B.B., ya que no atendían sus necesidades particulares al no brindarles los servicios recomendados por los especialistas. Desde que se presentó la querella hasta que se celebró la vista administrativa, el Departamento no ofreció otra alternativa de ubicación para W.B.B.

Durante el tiempo en que estuvo matriculado en I.M.E.I., W.B.B. mejoró significativamente en su funcionamiento académico y conducta. A estos fines, la Sra. Bruckman declaró detalladamente en la vista administrativa sobre los beneficios que éste recibió en el aspecto académico y el escolar. Como ejemplo de esta mejoría, en la vista se presentó un documento que el Departamento sostiene que no es admisible, ni fue admitido como prueba, para demostrar que W.B.B. había logrado redactar mensajes por iniciativa propia, algo que no podía hacer antes de estudiar en IMEI. Al comenzar el año académico 2006-2007, W.B.B. no pudo continuar en IMEI porque su madre no pudo continuar pagando los servicios.

El 22 de noviembre de 2006, la Sra. Bruckman presentó una querella administrativa para solicitar compra de servicios y reembolso por los gastos privados de servicios de educación especial en IMEI. Luego de varios incidentes procesales, se celebró la vista administrativa que duró varios días. Durante las mismas, las partes presentaron abundante prueba testifical y documental y, posteriormente, memorandos de derecho.

El 26 de abril de 2007, el Juez Administrativo emitió Resolución en la cual denegó el reembolso de los gastos incurridos en IMEI antes de que se presentara la querella, pero se ordenó que se reembolsara a la parte querellante recurrida los gastos incurridos a partir de esa fecha. Además, se ordenó al Departamento comprar al IMEI servicios de educación especial y apoyo para W.B.B.

Inconforme con dicha determinación, el 29 de mayo de 2007, el Departamento presentó un recurso de revisión ante este Tribunal, señalando los siguientes errores:

*"1. Erró el Honorable Juez Administrativo al impartirle valor probatorio a un documento presentado durante su testimonio por la Sra. Jannette Bruckman, madre del estudiante, que fue objetado oportunamente por el Departamento de Educación y no fue presentado en evidencia por el representante legal de la parte recurrida, por lo que no fue admisible en evidencia y no forma parte del expediente oficial de la querella.*

*2. Erró el Honorable Juez Administrativo al disponer un remedio contrario a derecho al ordenar el reembolso de los gastos incurridos por la madre de W.B.B. desde la radicación de la querella el 2 de noviembre de 2005.*

*3. Erró el Honorable Juez Administrativo al ordenar una compra de servicios prospectiva contraria a derecho en el Instituto Modelo de Enseñanza Individualizada (I.M.E.I.)."*

La parte recurrida presentó su escrito en oposición y el caso quedó sometido para nuestro dictamen.

## II

Al discutir el primer error, el Departamento sostiene, en síntesis, que el Juez Administrativo le dio valor probatorio a un documento que no fue presentado como prueba para concluir que W.B.B. mejoró significativamente mientras asistió a IMEI, lo que considera fue un error significativo y la base para concluir que los servicios que brindó IMEI eran adecuados. No tiene razón.

En las determinaciones de hechos números 32 y 33 de la Resolución se indicó lo siguiente:

*"32. Durante el tiempo que estuvo matriculado en IMEI, [W.B.B.] mejoró significativamente en su funcionamiento académico y en su conducta.*

*33. Como ejemplo de esta mejoría, en la vista se presentó prueba, la cual no fue contradicha, que demuestra que [W.B.B.] había logrado redactar mensajes por iniciativa propia, algo que no podía hacer antes de estudiar en IMEI."* Apéndice del recurrente, Anejo VI, pág. 200.

Además, en la parte de Derecho Aplicable de la Resolución se indicó que:

*"Por otra parte, la prueba presentada por la parte querellante, la cual no fue impugnada por el querellado, demostró que [W.B.B.] mejoró de manera significativa mientras estuvo asistiendo al Instituto Modelo de Enseñanza Individualizada (IMEI), durante el año escolar 2005-06. Sobre este particular, la Sra. Janette Bruckman, madre del querellante, testificó en detalle sobre los beneficios recibidos por [W.B.B.] tanto en el aspecto académico, como en el emocional, durante ese período escolar. Por ejemplo, ella presentó prueba de que luego de entrar a IMEI, [W.B.B.] pudo redactar un mensaje por iniciativa propia, algo que no podía*

*hacer mientras estuvo en el sistema público de enseñanza. Esta prueba no fue contradicha por la parte querellada."* Apéndice del recurrente, Anejo VI, págs. 203-204.

De lo anterior surge que, aun cuando se menciona un documento que podría ser el que indica el Departamento, la conclusión del Juez Administrativo de que W.B.B. mejoró académica y emocionalmente de forma significativa en IMEI se basó en el testimonio detallado de la Sra. Bruckman y esta prueba no fue contradicha por el Departamento. Este testimonio es prueba suficiente para sostener las citadas determinaciones de hechos de la Resolución. Regla 10 (D) de Evidencia, 32 L.P.R.A. Ap. IV, R. 10 (D).

Además, aun cuando se hubiera cometido el error, éste no fue perjudicial. Conforme la Regla 4 de Evidencia, 32 L.P.R.A. Ap. IV, R. 4, se requiere que la prueba erróneamente admitida sea factor decisivo o sustancial en la decisión. Esto significa determinar que tal prueba *"pudo haber tenido una influencia, notable y determinante, en el veredicto, fallo o sentencia que emitiera el juzgador de los hechos en el caso ante su consideración, fuera éste civil o criminal."* Pueblo v. Ruiz Bosch, 127 D.P.R. 762, 782 (1991).

En este caso si el Juez Administrativo se basó en el documento impugnado, esto no fue un factor decisivo o sustancial en su dictamen. Al concluir que W.B.B. mejoró en su funcionamiento académico y emocional de manera significativa, el juzgador recibió otra prueba que no fue el documento. A estos fines, según indicamos antes, el Juez Administrativo indicó que la Sra. Bruckman testificó detalladamente sobre los aspectos emocional y académico en los cuales hubo la mejoría significativa. Por lo tanto, aun si se cometió el error, ello no es suficiente para revocar la Resolución.

## III

En los otros dos señalamientos de error y en parte de su discusión del primer error, el Departamento se refiere a la naturaleza de los remedios que concedió el Juez Administrativo, por lo que los discutiremos en conjunto. Argumenta que no se probó que los servicios provistos por IMEI eran·los adecuados y bajo la Ley IDEA la agencia educativa no tiene que pagar costos de educación y servicios relacionados de un menor con impedimento si le ofrece una educación pública, gratuita y apropiada y los padres lo ubican unilateralmente en una facilidad privada. Además, alega que no podía concederse un remedio prospectivo.

La facultad revisora de los tribunales de las decisiones emitidas por una agencia administrativas incluye las siguientes áreas: (1) concesión del remedio apropiado; (2) revisión de las determinaciones de hechos conforme al criterio de evidencia sustancial; y (3) revisión de las conclusiones de derecho en su totalidad. *T-JAC, Inc. v. Caguas Centrum Limited,* 148 D.P.R. 70, 80-81 (1999); *Misión Ind. P.R. v. J.P.,* 146 D.P.R. 64, 129 (1998); D. Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme,* 2da. Ed., Bogotá, Forum, 2001, pág. 534.

La función revisora del tribunal, aunque restringida, tiene como propósito fundamental delimitar la discreción de los organismos administrativos y velar porque sus actuaciones sean conformes a la ley y estén dentro del marco del poder delegado. *Misión Ind. P.R. v. J.P.,* 146 D.P.R., a la pág. 129.

Este ejercicio por parte del tribunal está enmarcado en dos principios fundamentales que postula la Ley Núm. 170 de 12 de agosto de 1988, según enmendada, conocida como Ley de Procedimiento Administrativo Uniforme (LPAU), 3 L.P.R.A. sec. 2101 *et. seq. "Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo".* 3 L.P.R.A. sec. 2175. Sin embargo, *"[l]as conclusiones de derecho serán revisadas en todos sus aspectos por el tribunal." Id.* Es, por tanto, indispensable que la agencia realice determinaciones de hechos y conclusiones de derecho que puedan proporcionar a los tribunales la base en la que descansó la decisión del organismo administrativo. De esta forma, los tribunales estarán en posición de descargar su función revisora responsablemente.

El criterio rector en la revisión judicial de una determinación de hecho de una agencia es la existencia de evidencia sustancial. A estos fines, se ha definido evidencia sustancial como *"aquella [evidencia] pertinente que una mente razonable pueda aceptar como adecuada para sostener una conclusión"*. *Ramírez v. Depto. de Salud*, 147 D.P.R. 901, 905 (1999). De ordinario, los tribunales no intervendrán en las determinaciones de hechos de las agencias, mientras exista evidencia sustancial en apoyo de las mismas. *Pacheco v. Estancias*, 160 D.P.R. 409, 432 (2003). Dicho análisis requiere que la evidencia sea considerada en su totalidad; esto es, tanto la que sostenga la decisión administrativa como la que menoscabe el peso que la agencia le haya conferido. *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.*, 144 D.P.R. 425, 437 (1997). Esta norma persigue evitar que los tribunales sustituyan el criterio de la agencia en asuntos enmarcados en su destreza y especialización por el criterio del tribunal revisor.

Para sostener la posición de que no existe evidencia sustancial que apoye las determinaciones de la agencia administrativa, la parte afectada debe demostrar que existe *"otra prueba en el récord que razonablemente reduzca o menoscabe el peso de tal evidencia hasta el punto de que un tribunal no pueda, concienzudamente, concluir que la evidencia sea sustancial, en vista de la totalidad de la prueba presentada... y hasta el punto que se demuestre claramente que la decisión [de la agencia] ... no está justificada por una evaluación justa del peso de la prueba."* *Hilton Hotels v. Junta Salario Mínimo*, 74 D.P.R. 670, 686 (1953). La prueba ofrecida deberá desfavorecer la presunción de que la determinación del organismo administrativo se desprende de la totalidad de la prueba que éste tuvo ante su consideración. Véase, *Ramírez v. Depto. de Salud*, 147 D.P.R., a las págs. 905-906.

En cuanto a las determinaciones de derecho de la agencia, el tribunal podrá revisarlas en todos sus aspectos, aunque observando un nivel de deferencia por el criterio de la agencia en aquella legislación que ésta implante. Véase, *Rebollo Vda. de Liceaga v. Yiyi Motors*, 161 D.P.R.___ (2004), **2004 J.T.S. 4**; *P.R.T.C. v. J. Reg. Tel. de P.R.*, 151 D.P.R. 269 (2000). Esta norma no presupone que el tribunal revisor pueda descartar libremente las interpretaciones o conclusiones de la agencia administrativa, sino que les dará deferencia en la medida que éstas sean razonables. *Misión Ind. P.R. v. J.P.*, 146 D.P.R., a la pág. 132. Por tanto, el tribunal revisor sostendrá las conclusiones de la agencia mientras las mismas sean cónsonas con el propósito legislativo y no sean arbitrarias, ilegales o irrazonables. *Id.; T-JAC, Inc. v. Caguas Centrum Limited*, 148 D.P.R., a la pág. 80.

En aquellos asuntos que puedan ser catalogados como cuestiones mixtas de hechos y de derecho, la norma establecida es que la revisión judicial será análoga a la revisión de asuntos de derecho. Estos asuntos mixtos de hechos y de derecho surgen ordinariamente en ocasiones en las cuales existe confusión en cuanto a la aplicación del derecho a los hechos particulares del caso. *Fernández Quiñones, op. cit.*, pág. 561.

Por otro lado, la Sección 5 de la Carta de Derechos de nuestra Constitución establece que *"[t]oda persona tiene derecho a una educación que propenda al pleno desarrollo de su personalidad y al fortalecimiento del respeto de los derechos del hombre y de las libertades fundamentales."* El propósito principal de esta disposición *"es definir las aspiraciones colectivas sobre la educación y crear un sistema de enseñanza pública a niveles primario y secundario exclusivamente... sujeto a que el Estado tenga los recursos necesarios para su implantación."* *Asoc. Académicas y Col. Cristianos v. E.L.A.*, 135 D.P.R. 150, 168-169 (1994).

Para cumplir con este mandato de igualdad social, el ordenamiento jurídico no puede amparar el trato desigual injustificado en el ofrecimiento de oportunidades educativas primarias y secundarias a las personas con impedimentos. Así, *"[a]unque por muchos siglos las sociedades han marginado, discriminado y estigmatizado a las personas con impedimentos físicos, en las últimas dos décadas el estado moderno ha tomado medidas afirmativas para incorporarlos a la comunidad. Entre los cambios más notables se destaca el reconocimiento de su derecho a recibir y reclamar judicialmente educación remedial."* *Bonilla v. Chardón*, 118 D.P.R. 599, 605-606 (1978).

Con el propósito de asegurar la igualdad de oportunidad educativa para niños y niñas con impedimentos, el Congreso Federal aprobó la ley conocida como *"Individuals with Disabilities Education Act"* (Ley IDEA), según enmendada, 20 U.S.C.A. sec. 1400 *et. seq.* Esta legislación establece la obligación de los estados para que: (1) los jóvenes con impedimentos reciban una educación pública y apropiada que haga énfasis en proveerles la educación especial y los servicios relacionados diseñados para atender sus necesidades particulares; (2) se prepare a éstos para trabajar y llevar una vida independiente; (3) se asegure que se protejan los derechos de los niños y niñas con impedimentos y los de sus padres o guardianes; (4) se ayude a los estados, comunidades y agencias gubernamentales a proveer una educación adecuada para dichos niños; y (5) se evalúe y asegure la efectividad de los esfuerzos para educar adecuadamente a los niños con impedimentos. 20 U.S.C. 1400 (d).

El derecho fundamental que la Ley IDEA le concede a los menores con impedimentos es recibir una educación pública, gratuita y apropiada o *"FAPE".* 20 U.S.C. 1412 (a). Se define FAPE como la educación especial y los servicios relacionados pagados por el erario público y bajo supervisión y dirección pública que cumplen las exigencias de la agencia educativa estatal, los cuales incluyen educación preescolar, elemental o secundaria y se proveen conforme el programa educativo individualizado o *"PEI".* 20 U.S.C. 1401 (9). El PEI es, en síntesis, el plan escrito de las necesidades educacionales del menor con impedimento y la educación y servicios relacionados a proveerse especialmente diseñados para cumplir con esas necesidades. 20 U.S.C. 1414 (d).

Utilizando como modelo la citada ley federal, se aprobó en Puerto Rico la Ley de Servicios Educativos Integrales para Personas con Impedimentos, Ley Núm. 51 de 7 de junio de 1996 (Ley 51), 18 L.P.R.A. sec. 1351 *et. seq.* Ambas legislaciones proveen para ayudar a desarrollar las destrezas educativas y fomentar el beneficio de la educación especial contemplada en el PEI donde se le brinda al estudiante aquellos servicios relacionados que se recomienden por especialistas. La educación especial que recibe cada niño elegible al programa consiste de un plan especialmente diseñado para satisfacer las necesidades individuales y particulares del niño con impedimento, incluyendo instrucciones en el salón, en el hogar, hospitales, otras instituciones y en cualquier otro lugar en el cual el niño con impedimento se desenvuelva. 20 U.S.C. secs. 1401 (14) y 1414 (d); Art. 2 (14) de la Ley 51, 18 L.P.R.A. sec. 1351 (14).

Bajo la Ley IDEA, para resolver conflictos entre los padres y la agencia, aquéllos pueden presentar una querella y se celebrará una vista conforme el procedimiento administrativo estatal que cumpla el debido proceso de ley. 20 U.S.C. sec. 1415 (b) (6) y (f). La decisión del juez administrativo se apoyará en fundamentos sustantivos basados en la determinación de si el menor recibió una educación pública, gratuita y apropiada. 20 U.S.C. sec. 1415 (f)(3)(E)(i); 34 CFR 300.507 y 300.511. Véase, además, Art. 4 (b) (2) (D) de la Ley 51, 18 L.P.R.A. sec. 1353 (b) (2) (D).

En los casos en los cuales los padres colocan al menor con impedimento en una institución privada sin el consentimiento de la agencia educativa, procede la compra de los servicios y el reembolso de los gastos incurridos en el sector privado si los padres demuestran que la agencia educativa no cumple con su obligación de proveerle al estudiante con impedimento una educación pública, gratuita y apropiada y la escuela privada en la cual éste fue ubicado resulta beneficiosa para éste. 20 U.S.C. 1412 (a) (10) (C) (ii); 34 CFR 300.148 (c); *School Commitee of Burlington v. Department of Education,* 471 U.S. 359 (1985); *Florence County Sch. Dist. Four v. Carter,* 510 U.S. 7 (1993). Procede que el estudiante sea colocado en una escuela privada si la educación que ésta provee razonablemente se estima que le permitirá al estudiante recibir beneficios educacionales. *Florence County Sch. Dist. Four v. Carter, supra,* pág. 11; *Board of Ed. of Hendrick Hudson v. Rowley,* 458 U.S. 176, 207 (1982); *Blackman v. D.C.,* 278 F. Supp. 2d 1, 4 (2003). Y el remedio tiene que ser prospectivo, pues de otra manera, el estudiante tendría que obtener un remedio cada año. Véase, *Nieves-Márquez v. Puerto Rico,* 353 F. 3d 108, 117 (1er Cir.2003).

En este caso, precisamente, el Departamento no cumplió con su obligación de proveerle al menor una educación pública, gratuita y adecuada conforme se requiere por la legislación federal. El menor estuvo dos años en un grupo regular de cuarto grado y fracasó. Su maestro de educación especial recomendó un cambio de escuela, pero las dos alternativas del Departamento no eran apropiadas por varias razones, incluyendo que en ambas escuelas no había oportunidad de pasar de grado y, como W.B.B. tiene un funcionamiento intelectual promedio, posee el potencial de pasar de grado y adelantar en el sistema escolar. Y, luego de presentada la querella, el Departamento tampoco ofreció otra alternativa.

Además, IMEI es una ubicación apropiada para W.B.B. Mientras asistió a esa institución mejoró significativamente en su funcionamiento académico y en su conducta, por lo que se estimó razonablemente que allí se le brindaban al estudiante beneficios educacionales.

En estas circunstancias, el remedio apropiado bajo las disposiciones citadas de la Ley IDEA y su reglamentación era comprar los servicios en el sector privado y reembolsar los gastos incurridos por la madre en la institución privada desde que presentó la querella. En consecuencia, las conclusiones del Juez Administrativo son cónsonas con el propósito de dicha legislación y no son arbitrarias, ilegales o irrazonables, por lo que debemos sostenerlas. En conclusión, tampoco se cometieron estos errores y procede confirmar la decisión recurrida.

## IV

De conformidad con lo antes expresado, se confirma la resolución recurrida. Se le ordena al Departamento de Educación que cumpla inmediatamente con la Resolución emitida el 26 de abril de 2007 por el Juez Administrativo.

Notifíquese inmediatamente por facsímil y por la vía ordinaria.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.

Lcda. María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones