# 2009 DTA 69

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE SAN JUAN**
**PANEL I**

G.R.O.
Recurrente

v.

DEPARTAMENTO DE EDUCACIÓN
Recurrido

Núm. KLRA-2008-00843

San Juan, Puerto Rico, a 21 de abril de 2009

Panel integrado por su Presidente, el Juez Ramírez Nazario,
y los Jueces Piñero González y Morales Rodríguez

Ramírez Nazario, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Comparece el menor G.R.O. (G.R.O. o el recurrente) para solicitar la revocación de la Resolución emitida el 20 de mayo de 2008 por el Departamento de Educación. Mediante la referida Resolución, el Departamento de Educación denegó la solicitud de reembolso y compra de servicios educativos privados para G.R.O., así como la imposición de honorarios de abogado a favor del recurrente.

Considerado el recurso presentado, así como los documentos que lo acompañan, resolvemos confirmar la Resolución recurrida.

### I

G.R.O. padece de una condición de hemiparesis y epilepsia que le afecta sus áreas motoras, de lenguaje e inteligencia, por lo que desde los tres años de edad, fue registrado en el Programa de Educación Especial del Departamento de Educación. El recurrente comenzó a recibir su educación en un colegio privado, Marimée, hasta el 2007 cuando dicho colegio cesó operaciones. Para ese año contaba con ocho años de edad, y no sabía leer, escribir, sumar ni restar.

En vista del cierre de Marimée, el 10 de julio de 2007, la madre de G.R.O. solicitó al Departamento de Educación una ubicación apropiada para la educación de su hijo. La madre del menor se reunió con la Supervisora de Zona del Área de Educación Especial del Distrito II de San Juan, señora Iraida Casillas (señora Casillas). En dicha reunión, la madre de G.R.O. presentó una evaluación psicoeducativa de marzo de 2007, preparada a petición suya, por la psicóloga escolar, Laura Kezner. Dicha evaluación contenía ciertas recomendaciones que la psicóloga entendía eran necesarias para la ubicación adecuada del menor. Así, se llegó a unos acuerdos y se le ofrecieron varias alternativas de escuela a la madre de G.R.O. Ésta se comprometió a visitar las mismas e informar al Departamento de Educación sobre su decisión de matricular a G.R.O. en alguna de ellas.

En agosto de 2007, la madre del recurrente visitó algunas de las escuelas ofrecidas. No obstante, al comenzar el año escolar 2007-2008, en vista de que la madre no había informado si había escogido una escuela para el menor, la señora Casillas procedió a pre-ubicar a G.R.O. en la escuela José Rivera Solís. El 10 de septiembre de 2007, la maestra Michelle Santiago, de la referida escuela, se comunicó con la madre de G.R.O. para saber si el menor asistiría a dicha Escuela, en la que tenía un espacio reservado. En esa fecha, la madre del menor le indicó que había matriculado a G.R.O. en una institución privada, Colegio Caliope.

Posteriormente, el 9 de octubre de 2007, la madre de G.R.O. presentó una querella ante el Departamento de Educación para solicitar la compra de servicios educativos en el Colegio Caliope, el reembolso de los gastos incurridos en dicho plantel y la imposición de $3,500.00 por concepto de honorarios de abogado a favor de G.R.O.

Mientras se dilucidaba la querella, el 6 de febrero de 2008, se efectuó una reunión del Comité de Programación y Ubicación (COMPU) y se completó el Programa Educativo Individualizado (PEI) de G.R.O. Entre las recomendaciones del PEI se encuentra la ubicación de éste en un salón especial dentro de una escuela regular por grados, tiempo adicional en el proceso de enseñanza, terapia del habla, ocupacional y física. El PEI fue firmado por la madre de G.R.O. entre otras personas.

Luego de varios incidentes procesales, la vista administrativa para dilucidar la querella presentada por la madre de G.R.O. se celebró el 25 de abril de 2008. Durante ésta, declararon por parte de G.R.O., su madre y, como perito, la psicóloga Kezner. Por parte del Departamento de Educación declaró la señora Casillas. Evaluada la prueba presentada, el 20 de mayo de 2008, la Juez Administrativa que presidió la vista emitió la Resolución recurrida. Concluyó la Juez Administrativa que el Departamento de Educación ofreció a G.R.O. varias alternativas de ubicación pública adecuada, pero la madre de éste optó unilateralmente por matricularlo en un colegio privado, sin notificarlo al Departamento de Educación. Así determinó que no procedía el reembolso de los gastos incurridos ni la compra de servicios privados. De igual forma determinó que el Departamento de Educación no había sido temerario, por lo que no procedía la imposición de honorarios de abogado a favor de G.R.O.

Insatisfecho, el recurrente solicitó reconsideración, que no fue atendida por la Juez Administrativa.

## II

Inconforme, el recurrente acude ante nos mediante recurso de revisión judicial y señala como errores:

*"Erró el foro administrativo recurrido en su apreciación de la prueba testifical, pericial y documental en este caso al declarar No Ha Lugar la solicitud de compra de servicios presentada por la parte recurrente cuando toda la prueba en el caso fue clara a los efectos de ninguna de las alternativas ofrecidas por el Departamento de Educación eran las adecuadas para el menor querellante recurrente y que la ubicación privada es la mejor alternativa para el menor.*

*Erró el foro administrativo recurrido al no aplicar al caso de epígrafe las disposiciones de la Ley de Educación Especial Federal conocida como Individuals with Disabilities Education Improvement Act y la Ley Federal de Educación conocida como No Chile Left Behind y su correspondiente jurisprudencia interpretativa en cuanto lo correspondiente a la educación adecuada en el ambiente menos restrictivo para el menor.*

*Erró el foro administrativo recurrido al no ordenar el reembolso de los dineros pagados por la madre del menor querellante por los servicios educativos recibidos por el menor querellante en el colegio privado durante el año escolar 2007-2008.*

*Erró el foro administrativo recurrido al no ordenar el pago de honorarios de abogado a favor de la parte*

*querellante recurrente."*

### III

La Sección 4.5 de la Ley de Procedimiento Administrativo Uniforme (en adelante LPAU), 3 L.P.R.A. § 2175, provee para la revisión judicial de una decisión administrativa. Dicha revisión comprende tres aspectos: (1) la concesión del remedio apropiado, (2) las determinaciones de hechos, y (3) las conclusiones de derecho del organismo administrativo. *Padín Medina v. Adm. Sistemas de Retiro*, Opinión del 2 de agosto de 2007, **2007 J.T.S. 151**.

Las decisiones administrativas tienen a su favor una presunción de legalidad y corrección. *Murphy Bernabé v. Tribunal Superior*, 103 D.P.R. 692, 699 (1975). Esta presunción de regularidad y corrección debe ser respetada mientras la parte que la impugne no produzca suficiente evidencia para derrotarla. Al revisar la decisión de una agencia administrativa, el Tribunal debe examinar primero si la actuación del organismo administrativo se ajusta al poder que le ha sido delegado, *Viajes Gallardo v. Clavell*, 131 D.P.R. 275 (1992); *Hernández Denton v. Quiñones Desdier*, 102 D.P.R. 218, 223-224 (1974), pues de lo contrario su actuación sería *ultra vires* y, como consecuencia, nula. *Fuertes y Otros v. A.R.P.E.*, 134 D.P.R. 947 (1993). En ausencia de evidencia de que el organismo administrativo actuó arbitrariamente, este Tribunal no sustituirá su criterio por el de la agencia. *M & V Orthodontics v. Negociado de Seguridad de Empleo*, 115 DPR 183, 189 (1994).

La revisión judicial se limita a determinar si hay evidencia sustancial en el expediente para sostener la conclusión de la agencia o si ésta actuó de manera arbitraria, caprichosa o ilegal o tan irrazonablemente que su actuación constituyó un abuso de discreción. *Mun. de San Juan v. J.C.A.*, 149 D.P.R. 263, 280 (1999); *Reyes Salcedo v. Policía de P.R.*, 143 D.P.R. 85, 94 (1997); *Fuertes y otros v. A.R.P.E., supra*. Cuando se impugnan decisiones de los organismos administrativos, los tribunales deben indagar sobre la razonabilidad de las mismas y no deben sustituirlas por su propio criterio. Sólo podrá revocarse o modificarse la actuación administrativa cuando se pruebe que la actuación impugnada fue arbitraria, ilegal o irrazonable o cuando no exista en la totalidad del expediente prueba sustancial que sostenga las determinaciones efectuadas por la agencia. *Misión Ind. P.R. v. J.P. y A.A.A.*, 142 D.P.R. 656, 674 (1997). En ausencia de tales consideraciones, la actuación administrativa deberá ser confirmada. *Id.*

En cuanto a las conclusiones de derecho, la LPAU estatuye que éstas pueden ser revisadas en todos sus aspectos por el tribunal. No obstante, es norma reiterada que los tribunales deben concederle gran peso y deferencia a las interpretaciones que los organismos administrativos realizan de las leyes y reglamentos que administran. Los tribunales no pueden descartar libremente la interpretación de la agencia y sus conclusiones y así sustituir el criterio de éstas por el propio. *Hernández v. Centro Unido*, 168 D.P.R. ___, **2006 J.T.S. 140**; *P.C.M.E. v. J.C.A.*, 166 D.P.R. 599, (2005).

Insistimos, los tribunales deben concederle deferencia a la interpretación de la ley o reglamento que realiza determinada agencia administrativa si ésta es razonable, aunque no sea la única interpretación razonable, *Hernández v. Centro Unido, supra*. Es norma reiterada que los tribunales únicamente podrán sustituir el criterio de la agencia por el suyo cuando no encuentren una base racional para explicar la determinación administrativa. *Hernández v. Centro Unido, supra*. Ello se debe, a que por tratarse de áreas del derecho que manejan a diario, las agencias desarrollan un conocimiento especializado al respecto que no debe ser menospreciado. *Rivera Rentas v. A & C Development*, 144 D.P.R. 450 (1997).

En lo pertinente al asunto principal de este caso, la Sección 5 de la Carta de Derechos de nuestra Constitución establece que *"[t]oda persona tiene derecho a una educación que propenda al pleno desarrollo de su personalidad y al fortalecimiento del respeto de los derechos del hombre y de las libertades fundamentales."* El propósito principal de esta disposición *"es definir las aspiraciones colectivas sobre la educación y crear un sistema de enseñanza pública a niveles primario y secundario exclusivamente... sujeto a que el Estado tenga los*

*recursos necesarios para su implantación." Asoc. Académicas y Col. Cristianos v. E.L.A.,* 135 D.P.R. 150, 168-169 (1994).

Para cumplir con este mandato de igualdad social, el ordenamiento jurídico no puede amparar el trato desigual injustificado en el ofrecimiento de oportunidades educativas primarias y secundarias a las personas con impedimentos. Así, *"[a]unque por muchos siglos las sociedades han marginado, discriminado y estigmatizado a las personas con impedimentos físicos, en las últimas dos décadas el estado moderno ha tomado medidas afirmativas para incorporarlos a la comunidad. Entre los cambios más notables se destaca el reconocimiento de su derecho a recibir y reclamar judicialmente educación remedial." Bonilla v. Chardón,* 118 D.P.R. 599, 605-606 (1978).

Con el propósito de asegurar la igualdad de oportunidad educativa para niños y niñas con impedimentos, el Congreso Federal aprobó la ley conocida como *"Individuals with Disabilities Education Act"* (Ley IDEA), según enmendada, 20 U.S.C.A. sec. 1400 *et. seq.* Posteriormente, aprobó la ley *"Individuals with Disabilities Education Improvement Act"* de 2004 (IDEIA), 20 U.S.C.A. sec. 1400 *et. seq.* Esta legislación establece la obligación de los estados para que: (1) los jóvenes con impedimentos reciban una educación pública y apropiada que haga énfasis en proveerles la educación especial y los servicios relacionados diseñados para atender sus necesidades particulares; (2) se prepare a éstos para trabajar y llevar una vida independiente; (3) se asegure que se protejan los derechos de los niños y niñas con impedimentos y los de sus padres o guardianes; (4) se ayude a los estados, comunidades y agencias gubernamentales a proveer una educación adecuada para dichos niños; y (5) se evalúe y asegure la efectividad de los esfuerzos para educar adecuadamente a los niños con impedimentos. 20 U.S.C. 1400 (d).

El derecho fundamental que la Ley IDEA le concede a los menores con impedimentos es recibir una educación pública, gratuita y apropiada o *"FAPE"*. 20 U.S.C. 1412 (a). Se define FAPE como la educación especial y los servicios relacionados pagados por el erario público y bajo supervisión y dirección pública que cumplen las exigencias de la agencia educativa estatal, los cuales incluyen educación preescolar, elemental o secundaria y se proveen conforme el programa educativo individualizado o *"PEI"*. 20 U.S.C. 1401 (9). El PEI es, en síntesis, el plan escrito de las necesidades educacionales del menor con impedimento y la educación y servicios relacionados a proveerse especialmente diseñados para cumplir con esas necesidades. 20 U.S.C. 1414 (d).

Utilizando como modelo la citada ley federal, se aprobó en Puerto Rico la Ley de Servicios Educativos Integrales para Personas con Impedimentos, Ley Núm. 51 de 7 de junio de 1996 (Ley 51), 18 L.P.R.A. sec. 1351 *et. seq.* Ambas legislaciones proveen para ayudar a desarrollar las destrezas educativas y fomentar el beneficio de la educación especial y se le brinde al estudiante aquellos servicios relacionados que se recomienden por especialistas. La educación especial que recibe cada niño elegible al programa consiste de un plan especialmente diseñado para satisfacer las necesidades individuales y particulares del niño con impedimento, incluyendo instrucciones en el salón, en el hogar, hospitales, otras instituciones y en cualquier otro lugar en el cual el niño con impedimento se desenvuelva. 20 U.S.C. secs. 1401 (14) y 1414 (d); Art. 2 (14) de la Ley 51, 18 L.P.R.A. sec. 1351 (14).

Bajo la Ley IDEA, para resolver conflictos entre los padres y la agencia, aquellos pueden presentar una querella y se celebrará una vista conforme el procedimiento administrativo estatal que cumpla el debido proceso de ley. 20 U.S.C. sec. 1415 (b) (6) y (f). La decisión del juez administrativo se apoyará en fundamentos sustantivos basados en la determinación de si el menor recibió una educación pública, gratuita y apropiada. 20 U.S.C. sec. 1415 (f)(3)(E)(i); 34 CFR 300.507 y 300.511. Véase, además, Art. 4 (b) (2) (D) de la Ley 51, 18 L.P.R.A. sec. 1353 (b) (2) (D).

La política pública no requiere que se pague por los costos de educación y otros servicios relacionados en

una institución privada, si la agencia encargada puso a la disposición del estudiante una educación pública y apropiada y los padres optaron por la alternativa privada. Como excepción a esta norma general, si la agencia consintió a que el niño con impedimento fuese referido a una agencia privada o si el estudiante con necesidades especiales es ubicado por la propia agencia educativa en una institución privada, la agencia será responsable de sufragar el costo de la misma y le garantizará los mismos derechos que cuando es ubicado en un sistema público. Véase la IDEA, 20 USCA sec. 1412 (a)(10)(C).

La IDEA incluye disposiciones específicas que atienden la situación de los niños en escuelas privadas, 20 U.S.C.A. sec. 1412(a)(10). La parte (C) incluye las disposiciones aplicables al pago por los servicios educativos de niños inscritos en escuelas privadas sin el previo consentimiento de la agencia. Ésta dispone lo siguiente:

*"(C) Payment for Education of children enrolled in private schools without consent or referral by the public agency.*

*(i) In general. Subject to subparagraph (A), this subchapter does not require a local educational agency to pay for the cost of education, including special education and related services, of a child with a disability at a private school or facility if that agency made a free appropiate public education available to the child and the parents elected to place the child in such private school or facility.*

*(ii) Reimbursement for private school placement. If the parents of a child with a disability, who previously received special education and related services under the authority of a public agency, enroll the child in a private elementary or secondary school without the consent of or referral by the public agency, a court or a hearing officer may require the agency to reimburse the parents for the cost of that enrollment if the court or hearing officer finds that the agency had not made a free appropiate public education available to the child in a timely manner prior to that enrollment." 20 U.S.C.A. sec. 1412(a)(10)(C)."* (Énfasis nuestro).

Como puede verse, el inciso (i) establece que la agencia pública no está obligada a pagar por los costos relacionados con la educación y otros servicios relacionados en una institución privada, si esa agencia puso a la disposición del niño *"una educación pública y apropiada"* y los padres optan por la alternativa privada. La excepción a esa norma general, es la expuesta en el párrafo (ii), que faculta a un tribunal o juez administrativo a determinar que sí procede el reembolso, como excepción a la norma general antes citada, cuando dicho funcionario determine que la agencia no cumplió con esa obligación básica de proveer una educación pública y apropiada con prontitud o sea *"in a timely manner"*.

En los casos en los cuales los padres colocan al menor con impedimento en una institución privada sin el consentimiento de la agencia educativa, procede la compra de los servicios y el reembolso de los gastos incurridos en el sector privado si los padres demuestran que la agencia educativa no cumple con su obligación de proveerle al estudiante con impedimento una educación pública, gratuita y apropiada y la escuela privada en la cual éste fue ubicado resulta beneficiosa para éste. 20 U.S.C. 1412 (a) (10) (C) (ii); 34 CFR 300.148 (c); *School Commitee of Burlington v. Department of Education*, 471 U.S. 359 (1985); *Florence County Sch. Dist. Four v. Carter,* 510 U.S. 7 (1993). Procede que el estudiante sea colocado en una escuela privada si la educación que ésta provee razonablemente se estima que le permitirá al estudiante recibir beneficios educacionales. *Florence County Sch. Dist. Four v. Carter, supra*, pág. 11; *Board of Ed. of Hendrick Hudson v. Rowley*, 458 U.S. 176, 207 (1982); *Blackman v. D.C.,* 278 F. Supp. 2d 1, 4 (2003). Y el remedio tiene que ser prospectivo, pues de otra manera, el estudiante tendría que obtener un remedio cada año. Véase, *Nieves-Márquez v. Puerto Rico*, 353 F. 3d 108, 117 (1er Cir.2003).

De igual forma, IDEA autoriza al tribunal o juez administrativo a reducir o denegar el reembolso, si en la más reciente reunión para discutir el PEI, los padres no informaron a la agencia su inconformidad con el plan propuesto y su determinación de matricular al estudiante en una institución privada; si diez días laborables antes

de matricular al estudiante en una institución privada, los padres no notificaron por escrito a la agencia su inconformidad con la ubicación propuesta y su decisión de matricular al niño en una escuela privada; si, con anterioridad a la remoción del estudiante de la escuela pública, la agencia notificó a los padres que el niño sería evaluado, pero los padres no permitieron que dicha evaluación se realizara; y si un tribunal determina que la actuación de los padres fue irrazonable, 20 U.S.C. 1412 (a) (10) (C) (iii).

## IV

Discutiremos en conjunto los errores señalados por estar estrechamente relacionados. En síntesis, alega el recurrente que el Departamento de Educación debe reembolsarle y costear la compra de servicios educativos privados, pues no le proveyó una educación pública, gratuita y adecuada. Para llegar a tal conclusión, se basó en las recomendaciones de su perito, la psicóloga Kezner. Ésta sugería la ubicación de G.R.O. en grupos no mayores de tres estudiantes con enseñanza individualizada. Por su parte, el PEI realizado por el Departamento de Educación para el caso de G.R.O. recomienda su ubicación en un salón especial o contenido, en grupos pequeños en una escuela regular, sin establecer topes de estudiantes. (Transcripción de la Vista Administrativa, págs. 9 y 48).

La Juez Administrativa determinó que la madre de G.R.O. rechazó las alternativas ofrecidas por el Departamento de Educación sin evaluarlas a la luz del PEI y las recomendaciones del COMPU sobre las necesidades del menor. Así concluyó que ésta matriculó unilateralmente al menor en una institución privada que, según la prueba desfilada, no satisface los servicios educativos recomendados en su PEI. Igualmente dispuso que el recurrente no estableció que los servicios educativos ofrecidos por el Departamento no fueran apropiados para él. Consignó además en su resolución que existe una presunción de corrección en la ley IDEA, a favor de la ubicación ofrecida por el Departamento, que no fue derrotada con preponderancia de prueba. Asimismo, decretó que el Departamento justificó sus alternativas públicas como apropiadas y conforme al PEI.

A base del derecho citado, concluimos que el recurrente no ha derrotado la deferencia que merece la decisión emitida por el foro administrativo. No ha demostrado que en el récord administrativo exista otra evidencia que menoscabe el valor probatorio de la evidencia sustancial en que se fundamenta la resolución recurrida y el *expertise* de la agencia en la aplicación e interpretación de las leyes que le fueron encomendadas por el legislador.

La prueba y los testimonios presentados en la vista administrativa demostraron que la agencia cumplió con la política pública de garantizar al menor una educación pública gratuita apropiada y especialmente diseñada a sus necesidades individuales. Cónsono con la ley aplicable, el Departamento preparó un PEI para atender las necesidades del menor que fue avalado por la madre de G.R.O.. Los testimonios establecieron claramente que la agencia ofreció a la madre de G.R.O. la oportunidad de ubicar al niño en varias escuelas públicas apropiadas. En las escuelas propuestas, los maestros que estarían a cargo del menor tienen una preparación en educación especial y experiencia. Tenían un número reducido de estudiantes, que aunque mayor a lo sugerido por la perito del recurrente, cumplían con el PEI. (Transcripción de la Vista Administrativa, págs. 48-50,53). Debemos aquí recordar que la perito del recurrente no forma parte del COMPU, por lo que sus recomendaciones, aunque pueden ser consideradas por dicho organismo, no son determinantes para la preparación del PEI ni obligan al Departamento de Educación al ofrecer las alternativas de ubicación. Surge además de la prueba presentada que se ofreció por el Departamento la asistencia de un trabajador (fijo) asignado al menor (T-1), para atender la condición especial de G.R.O., en particular sus episodios de epilepsia. Así también, se estableció que las escuelas propuestas ofrecían las terapias y la promoción de grados según dispuesto en el PEI. Esto contrasta con lo declarado sobre el colegio privado Caliope, en el que fue matriculado, que no provee tales terapias ni promoción de grados. (Transcripción de la Vista Administrativa, pág. 48).

A pesar de todo esto, la madre decidió, unilateralmente, matricular a G.R.O. en una institución privada donde no se satisfacen a cabalidad sus necesidades educativas especiales. Insiste en que su hijo debe recibir

7

educación según la recomendación de su perito, la psicóloga Kezner. No obstante, el Estado no tiene la obligación de sufragar los gastos de educación escolar privada de un menor con impedimentos, a quien se le ha ofrecido una educación pública apropiada y oportuna (especialmente diseñada de conformidad con sus necesidades), por el mero rechazo injustificado de su madre.

Ciertamente, el Departamento de Educación no está obligado a sufragar el pago de los servicios de educación especial y servicios relacionados de un estudiante con impedimentos en una institución privada si la agencia tiene disponible educación pública, gratuita y apropiada. El remedio de compra de servicios es uno extremo que debe ser otorgado en situaciones donde dichos servicios o recursos no pueden ser provistos en una escuela del Departamento. Ahora bien, para que proceda el remedio de compra de servicios debe cumplirse además con lo dispuesto en la Sección 1412(b) de la ley federal. Esta sección requiere que los padres que se propongan matricular a su hijo o hija con impedimento en una escuela privada, notifiquen a la agencia educativa en la reunión de discusión del PEI que ocurra antes del cambio o 10 días antes de hacerlo. Dicha notificación tiene el fin de que el padre o madre no sólo notifique a la agencia de que el menor será ubicado en una institución privada, sino dejar clara la intención de responsabilizar a la agencia por no haber ofrecido la alternativa adecuada y oportuna. Con ello, se pretende también descartar la idea de que los padres optaron por ubicar al menor en una escuela de su preferencia, sin la expectativa de obtener reembolso de fondos públicos. Además, esta notificación provee una oportunidad a la agencia para corregir cualquier deficiencia en la educación del menor, evaluar al estudiante, enmendar el PEI u ofrecer cualquier otra alternativa. Surge de la prueba desfilada que la madre del menor fue orientada sobre este particular. (Transcripción de la Vista Administrativa, pág. 51).

Examinado el expediente ante nos, resulta evidente que el Departamento de Educación cumplió con su obligación en ley de poner a la disposición del estudiante una educación especial pública apropiada. No obstante, la madre de G.R.O. optó voluntariamente por una alternativa privada, sin el conocimiento del Departamento de Educación y sin que éste lo hubiera autorizado expresamente. También es evidente que si el Departamento de Educación recibió la solicitud de ubicación en julio de 2007 y el Distrito Escolar respondió requiriéndole que visitara las escuelas ofrecidas en agosto, lo hizo en un tiempo oportuno. Como antes indicamos, la agencia puso a disposición del niño "*in a timely manner*" unas alternativas de educación pública (gratis) y adecuada, antes de que se matriculara al niño en la institución privada. Cuando la madre de G.R.O. solicitó la ubicación escolar de su hijo, el Distrito Escolar reaccionó favorablemente y le recomendó que visitara varias escuelas para que seleccionara. Así pues, tal como determinara el Juez Administrativo, habiendo el Departamento de Educación puesto a su disposición la educación requerida, en una institución pública, el recurrente no tiene derecho al reembolso que solicita.

Para justificar su actuación unilateral, alega la madre de G.R.O. que procede la compra de servicios en Caliope, porque allí se ofrece al menor el ambiente menos restrictivo que amerita y se cumple con las especificaciones para su educación adecuada. Sin embargo, tanto el testimonio vertido por la perito Kezner como por la señora Casillas del Departamento de Educación, no apoyan su contención. Por un lado, la psicóloga Kezner declaró que G.R.O. ha progresado en Caliope, donde afirmó recibe los servicios que amerita. Sin embargo, admitió que no ha visitado el Colegio Caliope mientras G.R.O. ha estado allí, y que no ha evaluado a G.R.O. con posterioridad a su matrícula en dicho colegio. (Transcripción de la Vista Administrativa, págs. 25-26, 29). Por tanto, su testimonio carece de bases confiables, reales y concretas. No se trata siquiera de una opinión profesional, pues no ha evaluado al menor, sino de una conjetura o especulación basada en referencias no corroboradas personalmente. Igualmente declaró que las escuelas ofrecidas por el Departamento de Educación no eran adecuadas. Sin embargo, también admitió que no las visitó ni las evaluó en relación con el caso de G.R.O. (Transcripción de la Vista Administrativa, págs. 28, 31). En fin su testimonio se basó en recuerdos de experiencias pasadas, especulaciones y conjeturas. (Transcripción de la Vista Administrativa, págs. 30-32). Así también el testimonio de la madre de G.R.O. sobre este particular básicamente se limitó a comparar Caliope con la situación anterior del menor, es decir, con la enseñanza impartida por el Colegio

Marimée. (Transcripción de la Vista Administrativa, págs. 15-16). Por lo que no se trata de deficiencias señaladas contra el Departamento de Educación, sino contra Marimée que era un colegio privado. Ni la opinión personal de la madre de G.R.O., ni la de su perito, fueron suficiente para demostrar que las escuelas sugeridas no fueran adecuadas.

De otra parte, el PEI, producto de la evaluación concreta y específica realizada por el Departamento de Educación para el caso de G.R.O., recomienda su ubicación en un salón contenido de una escuela regular por grados. Como ya mencionamos, Caliope no ofrece esto, pues no es una escuela regular. Es una escuela especial por niveles, no grados, y no ofrece las terapias recomendadas por el PEI. En cambio, la señora Casillas declaró que la Escuela José Rivera Solís, en la que se le había reservado el espacio de G.R.O., como otras de las que ofreció, pueden brindar gratuitamente una educación como la que brinda Caliope, además, cumplir con las recomendaciones del PEI. (Transcripción de la Vista Administrativa, pág. 49).

Por último, el recurrente llama la atención a que de conformidad con la Ley IDEA debe concedérsele honorarios de abogado.

La sec. 615 (i) (3) de dicha Ley, 20 U.S.C. sec. 1415 (i) (3), dispone en parte:

*"(3) Jurisdiction of district courts; attorneys' fees*

*(A) In general*

*The district courts of the United States shall have jurisdiction of actions brought under this section without regard to the amount in controversy.*

*(B) Award of attorneys' fees*

*(i) In general. In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs—*

*(I) to a prevailing party who is the parent of a child with a disability; (II) to a prevailing party who is a State educational agency or local educational agency against the attorney of a parent who files a complaint or subsequent cause of action that is frivolous, unreasonable, or without foundation, or against the attorney of a parent who continued to litigate after the litigation clearly became frivolous, unreasonable, or without foundation; or (III) to a prevailing State educational agency or local educational agency against the attorney of a parent, or against the parent, if the parent's complaint or subsequent cause of action was presented for any improper purpose, such as to harass, to cause unnecessary delay, or to needlessly increase the cost of litigation."*

El recurrente estima que dicha sección, a pesar de facultar específicamente a los tribunales federales de distrito para conceder honorarios de abogado, también debe aplicar a los jueces en los procesos administrativos. Señaló que el texto de la ley dispone para la conesión de honorarios *"in any action or proceeding brought under this section,"* lo cual incluiría los procesos administrativos que la misma ley contempla como alternativa al proceso judicial. Además, alegó que la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A., secs. 2101 *et seq.*, faculta a las agencias a imponer honorarios de abogado cuando lo consideren pertinente. En vista del resultado del caso, se hace innecesaria la discusión de tal señalamiento de error, pues el recurrente no ha prevalecido.

En conclusión, no se cometieron los errores señalados. Nada de lo alegado por el recurrente nos mueve a negarle la deferencia debida a la razonable y correcta determinación administrativa emitida por el Juez Administrativo.

9

## V

De conformidad con lo antes expresado, se confirma la Resolución recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.

Lcda. Dimarie Alicea Lozada
Secretaria del Tribunal de Apelaciones