TEXTO COMPLETO DE LA SENTENCIA
Comparece el Estado Libre Asociado, Departamento de Educación, representado por la Oficina del Procurador General, para solicitar la revocación de la Resolución emitida el 21 de noviembre de 2008 por el Juez Administrativo de Educación Especial de dicho Departamento. Mediante la Referida Resolución, éste declaró con lugar la compra de servicios educativos a la Escuela CAPRI y ordenó al Departamento de Educación el reembolso de los gastos incurridos por la familia de la joven Génesis De Jesús Torres en dicha institución, dentro de un plazo de treinta días.
Considerados los escritos de las partes, así como los documentos que los acompañan a la luz del derecho aplicable, resolvemos confirmar la Resolución recurrida.
I
Génesis De Jesús Torres (Génesis) es una estudiante registrada en el Programa de Educación Especial del Departamento de Educación del Estado Libre Asociado de Puerto Rico desde el 1999. Desde sus años escolares en nivel elemental, ha presentado problemas de conducta y ha sido diagnosticada con varias condiciones como déficit de atención, hiperactividad, bipolaridad, y trastorno explosivo intermitente.
Al comenzar el nivel intermedio, Génesis fue ubicada en el Escuela Segunda Unidad Juan D. Stubbe. Allí cursó estudios hasta el noveno grado asignada a un salón regular con salón recurso. Los problemas de comportamiento de Génesis empeoraron, por lo que fue atendida por especialistas, entre ellos, el trabajador social de la escuela, que recomendaron un cambio de escuela. El Comité de Programación y Ubicación (COMPU) se reunió con la madre de Génesis, señora Anabelle Torres (señora Torres), para discutir la conducta de la joven. Resultado de ello, se le estableció un horario matutino. La señora Torres se comunicó con la escuela para indicar que el cambio de horario estaba afectando adversamente a Génesis. En reunión posterior *1086 con el COMPU, la señora Torres solicitó que se le asignara a Génesis el horario regular y un asistente de servicios. (Vea Resolución recurrida, págs. 4-5).
Durante ese año escolar 2007-2008, la señora Torres presentó una querella ante el Departamento de Educación para que se ubicara a Génesis en una escuela con atención individualizada. (Véase querella del 14 de noviembre de 2007, Apéndice del Departamento de Educación, pág. 34). El 7 de diciembre de 2007 se llegó a un acuerdo tras una reunión de mediación dentro del proceso de la querella presentada. Se acordó ubicar a Génesis en la Escuela Juan Domingo de Guaynabo. No obstante, cuando se iniciaron las gestiones para matricularla en dicho plantel, se les informó que el mismo sólo provee educación hasta noveno grado. La señora Torres presentó una moción solicitando la celebración de una vista tras exponer que dicha opción sólo brindaría servicios a Génesis por un semestre (el segundo semestre del año escolar 2007-2008) en el grado que ésta se encontraba cursando. Luego se tendría que reiniciar el proceso de identificar otra escuela para el décimo grado en adelante. Así, expresó que todos estos cambios agravarían la condición de Génesis y solicitó la compra de servicios educativos a una institución privada para el año escolar siguiente. (Anejo 9, Apéndice de la parte recurrida).
En tanto, Génesis continuó cursando el noveno grado en la Escuela Juan D. Stubbe con un aprovechamiento y una conducta deficiente. Ante ello, la señora Torres comunicó su insatisfacción con los servicios y alternativas que le brindaba el Departamento de Educación. Así, Génesis finalizó su noveno grado, sin haberse seleccionado una ubicación escolar para cursar el décimo grado. Hubo varias reuniones con el COMPU que arrojaron dos alternativas propuestas por el Departamento de Educación, a saber la Escuela Vocacional y, en segundo lugar, la Escuela Luis Muñoz Iglesias. Ambas opciones fueron rechazadas por la señora Torres, toda vez que no respondían a las necesidades de Génesis según las recomendaciones de los especialistas que la atendían. (Véase carta de 23 de abril de 2008, Anejo III, pág. 33, Apéndice del recurso.)
En el proceso de la querella presentada, se celebró una vista el 8 de agosto de 2008. Durante la misma, la señora Torres propuso el Instituto Modelo de Enseñanza Individualizada (IMEI) como alternativa de servicios privados para Génesis. No obstante, cuando se decidió comprar el servicio, el espacio para Génesis ya no estaba disponible. En vista de ello, el 26 de septiembre de 2008, la señora Torres presentó una moción urgente para informar la no disponibilidad de IMEI y que había gestionado otra alternativa para ubicar a Génesis, quien a esa fecha de iniciado el semestre, no tenía ubicación escolar. Así, solicitó la celebración de una vista para proponer la alternativa de ubicación ofrecida por el Centro de Aprendizaje Individualizado para Génesis (CAPRI).
Así las cosas, se celebró una vista el 31 de octubre de 2008. A esta fecha, Génesis había sido ubicada en CAPRI. Durante la referida vista testificó la Dra. López Laureano, psicóloga clínica y perito de la señora Torres. Declaró sobre la adaptación favorable de Génesis en CAPRI y sobre una evaluación educativa que le realizara en octubre de 2008. La señora Torres también declaró sobre la adaptación de Génesis en la nueva Institución y sobre la propuesta de servicios y costos de CAPRI. Previa orden a esos efectos, la señora Torres presentó por escrito, mediante moción, la propuesta de CAPRI con sus costos. Por parte del Departamento de Educación, testificaron la señora María Cotto, maestra de educación especial, el maestro Jesús Del Valle y la señora Doris Morales, supervisora de zona de Cidra. Sus testimonios, principalmente de la señora Cotto, consistieron básicamente de los problemas de adaptación y de conducta de Génesis en la Escuela Juan D. Stubbe.
Finalmente, el Juez Administrativo emitió la Resolución recurrida. Tras determinar que el Departamento de Educación incumplió su obligación de proveer a Génesis de una educación apropiada, y que para el año escolar 2008-2009 el Departamento no tenía una ubicación educativa para la estudiante, declaró con lugar la compra de servicios educativos en CAPRI y ordenó el reembolso de los gastos incurridos por la familia de Génesis en dicha institución.
*1087 El 11 de diciembre de 2008, el Departamento de Educación solicitó la reconsideración de la Resolución recurrida. Expuso que no procedía el reembolso de los gastos incurridos por la familia de Génesis en la institución privada aludida debido a que su ubicación allí fue un acto unilateral de ésta. Señaló además que no se había entregado al Departamento de Educación la evaluación sicológica de Génesis preparada por la Dra. López Laureano para entonces considerar ubicarla en una institución privada, ni se habían entregado las facturas que evidenciaran los gastos incurridos, a ser reembolsados. Su solicitud de reconsideración no fue atendida.
II
Inconforme, el Departamento de Educación acude ante nos mediante recurso de revisión y señala la comisión del siguiente error:

“Erró el Honorable Juez Examinador al determinar que procedía el reembolso por los servicios educativos que la estudiante recibió en una escuela privada debido a que:

1. No consideró que la decisión de ubicación a una escuela privada fue tomada de manera unilateral por la parte querellante.

2. Consideró una evaluación sicológica y el testimonio de la Dra. López Laureano sin que los mismos hubiesen sido discutidos y analizados por el COMPU.

3. No consideró que la parte querellante no había entregado al Departamento de Educación las facturas sobre los gastos incurridos por concepto de los servicios educativos privados. ”

III
La Sección 5 de la Carta de Derechos de nuestra Constitución establece que “[tjoda persona tiene derecho a una educación que propenda al pleno desarrollo de su personalidad y al fortalecimiento del respeto de los derechos del hombre y de las libertades fundamentales. ” El propósito principal de esta disposición “es definir las aspiraciones colectivas sobre la educación y crear un sistema de enseñanza pública a niveles primario y secundario exclusivamente... sujeto a que el Estado tenga los recursos necesarios para su implantación. ” Asoc. Académicas y Col. Cristianos v. E.L.A., 135 D.P.R. 150, 168-169 (1994).
Para cumplir con este mandato de igualdad social, el ordenamiento jurídico no puede amparar el trato desigual injustificado en el ofrecimiento de oportunidades educativas primarias y secundarias a las personas con impedimentos. Así, “[ajunque por muchos siglos las sociedades han marginado, discriminado y estigmatizado a las personas con impedimentos físicos, en las últimas dos décadas el estado moderno ha tomado medidas afirmativas para incorporarlos a la comunidad. Entre los cambios más notables se destaca el reconocimiento de su derecho a recibir y reclamar judicialmente educación remedial.” Bonilla v. Chardón, 118 D.P.R. 599, 605-606 (1978).
Con el propósito de asegurar la igualdad de oportunidad educativa para niños y niñas con impedimentos, el Congreso Federal aprobó la ley conocida como “Individual, with Disabilities Education Act” (Ley IDEA), según enmendada, 20 U.S.C.A. sec. 1400 et. seq. Posteriormente, aprobó la ley “Individuals with Disability Education Improvement Act” de 2004 (IDEIA), 20 U.S.C.A. sec. 1400 et. seq. Esta legislación establece la obligación de los estados para que: (1) los jóvenes con impedimentos reciban una educación pública y apropiada que haga énfasis en proveerles la educación especial y los servicios relacionados diseñados para atender sus necesidades particulares; (2) se prepare a éstos para trabajar y llevar una vida independiente; (3) se asegure que se protejan los derechos de los niños y niñas con impedimentos y los de sus padres o guardianes; (4) se ayude a los estados, comunidades y agencias gubernamentales a proveer una educación adecuada para dichos niños; y (5) se evalúe y asegure la efectividad de los esfuerzos para educar adecuadamente a los niños con impedimentos. 20 U.S.C. 1400 (d).
*1088 El derecho fundamental que la Ley IDEA le concede a los menores con impedimentos es recibir una educación pública, gratuita y apropiada o “FAPE”. 20 U.S.C. 1412 (a). Se define FAPE como la educación especial y los servicios relacionados pagados por el erario público y bajo supervisión y dirección pública que cumplen las exigencias de la agencia educativa estatal, los cuales incluyen educación preescolar, elemental o secundaria y se proveen conforme el programa educativo individualizado o “PEI”. 20 U.S.C. 1401 (9). El PEI es, en síntesis, el plan escrito de las necesidades educacionales del menor con impedimento y la educación y servicios relacionados a proveerse especialmente diseñados para cumplir con esas necesidades. 20 U.S.C. 1414 (d).
Utilizando como modelo la citada ley federal, se aprobó en Puerto Rico la Ley de Servicios Educativos Integrales para Personas con Impedimentos, Ley Núm. 51 de 7 de junio de 1996 (Ley 51), 18 L.P.R.A. see. 1351 et. seq. Ambas legislaciones proveen para ayudar a desarrollar las destrezas educativas y fomentar el beneficio de la educación especial y se le brinde al estudiante aquellos servicios relacionados que se recomienden por especialistas. La educación especial que recibe cada niño elegible al programa consiste de un plan especialmente diseñado para satisfacer las necesidades individuales y particulares del niño con impedimento, incluyendo instrucciones en el salón, en el hogar, hospitales, otras instituciones y en cualquier otro lugar en el cual el niño con impedimento se desenvuelva. 20 U.S.C. sees. 1401 (14) y 1414 (d); Art. 2 (14) de la Ley 51, 18 L.P.R.A. see. 1351 (14).
Bajo la Ley IDEA, para resolver conflictos entre los padres y la agencia, aquellos pueden presentar una querella y se celebrará una vista conforme el procedimiento administrativo estatal que cumpla el debido proceso de ley. 20 U.S.C. see. 1415 (b) (6) y (f). La decisión del juez administrativo se apoyará en fundamentos sustantivos basados en la determinación de si el menor recibió una educación pública, gratuita y apropiada. 20 U.S.C. see. 1415 (f)(3)(E)(i); 34 CFR 300.507 y 300.511. Véase, además, Art. 4 (b) (2) (D) de la Ley 51, 18 L. P.R.A. see. 1353 (b) (2) (D).
La política pública no requiere que se pague por los costos de educación y otros servicios relacionados en una institución privada, si la agencia encargada puso a la disposición del estudiante una educación pública y apropiada y los padres optaron por la alternativa privada. Como excepción a esta norma general, si la agencia consintió a que el niño con impedimento fuese referido a una agencia privada o si el estudiante con necesidades especiales es ubicado por la propia agencia educativa en una institución privada, la agencia será responsable de sufragar el costo de la misma y le garantizará los mismos derechos que cuando es ubicado en un sistema público. Véase la IDEA, 20 USCA see. 1412 (a)(10)(C).
La IDEA incluye disposiciones específicas que atienden la situación de los niños en escuelas privadas, 20 U.S.C.A. sec. 1412(a)(10). La parte (C) incluye las disposiciones aplicables al pago por los servicios educativos de niños inscritos en escuelas privadas sin el previo consentimiento de la agencia. Ésta dispone lo siguiente:

“(C) Payment for Education of children enrolled in private schools without consent or referral by the public agency.

(i) In general. Subject to subparagraph (A), this subchapter does not require a local educational agency to pay for the cost of education, including special education and related services, of a child with a disability at a private school or facility if that agency made a free appropiate public education available to the child and the parents elected to place the child in such private school or facility.

(ii) Reimbursement for private school placement. If the parents of a child with a disability, who previously received special education and related services under the authority of a public agency, enroll the child in a private elementary or secondary school without the consent of or referral by the public agency, a court or a hearine officer may require the aeencx to reimburse the varents for the cost of that enrollment if the court or *1089 hearing officer finds that the agency had not made a free appropiate public education available to the child in a timely manner prior to that enrollment." 20 U.S.C.A. sec. 1412(a)(10)(C). (Énfasis nuestro).
Como puede verse, el inciso (i) establece que la agencia pública no está obligada a pagar por los costos relacionados con la educación y otros servicios relacionados en una institución privada, si esa agencia puso a la disposición del niño "una educación pública y apropiada" y los padres optan por la alternativa privada. La excepción a esa norma general, es la expuesta en el párrafo (ii), que faculta a un tribunal o juez administrativo a determinar que sí procede el reembolso, como excepción a la norma general antes citada, cuando dicho funcionario determine que la agencia no cumplió con esa obligación básica de proveer una educación pública y apropiada con prontitud o sea “in a timely manner".
En los casos en los cuales los padres colocan al menor con impedimento en una institución privada sin el consentimiento de la agencia educativa, procede la compra de los servicios y el reembolso de los gastos incurridos en el sector privado si los padres demuestran que la agencia educativa no cumple con su obligación de proveerle al estudiante con impedimento una educación pública, gratuita y apropiada, y la escuela privada en la cual éste fue ubicado resulta beneficiosa para éste. 20 U.S.C. 14Í2 (a) (10) (C) (ii); 34 CFR 300.148 (c); School Commitee of Burlington v. Department of Education, 471 U.S. 359 (1985); Florence County Sch. Dist. Four v. Carter, 510 U.S. 7 (1993). Procede que el estudiante sea colocado en una escuela privada si la educación que ésta provee razonablemente se estima que le permitirá al estudiante recibir beneficios educacionales. Florence County Sch. Dist. Four v. Carter, supra, pág. 11; Board of Ed. of Hendrick Hudson v. Rowley, 458 U.S. 176, 207 (1982); Blackman v. D.C., 278 F. Supp. 2d 1, 4 (2003). Y el remedio tiene que ser prospectivo, pues de otra manera, el estudiante tendría que obtener un remedio cada año. Véase, Nieves-Márquez v. Puerto Rico, 353 F. 3d 108, 117 (1er Cir.2003).
En Puerto Rico, el Artículo 46 la Ley Núm. 51, supra, dispone que la persona con impedimento tiene el derecho, entre otros, de "ser evaluado con prontitud por un equipo multidisciplinario que tome en consideración sus áreas de funcionamiento y necesidades, de modo que pueda recibir los servicios educativos, relacionados e indispensables para su educación, de acuerdo al programa educativo individualizado para el desarrollo óptimo de sus potencialidades". 18 L.P.R.A. see. 1353(5).
Por otro lado, La Sección 4.5 de la Ley de Procedimiento Administrativo Uniforme (en adelante LPAU), 3 L.P.R.A. § 2175, provee para la revisión judicial de una decisión administrativa. Dicha revisión comprende tres aspectos: (1) la concesión del remedio apropiado, (2) las determinaciones de hechos, y (3) las conclusiones de derecho del organismo administrativo. Padín Medina v. Adm. Sistemas de Retiro, Opinión del 2 de agosto de 2007, 2007 J.T.S. 151.
Las decisiones administrativas tienen a su favor una presunción de legalidad y corrección. Murphy Bernabé v. Tribunal Superior, 103 D.P.R. 692, 699 (1975). Esta presunción de regularidad y corrección debe ser respetada mientras la parte que la impugne no produzca suficiente evidencia para derrotarla. Al revisar la decisión de una agencia administrativa, el Tribunal debe examinar primero si la actuación del organismo administrativo se ajusta al poder que le ha sido delegado, Viajes Gallardo v. Clavell, 131 D.P.R. 275 (1992); Hernández Denton v. Quiñones Desdier, 102 D.P.R. 218, 223-224 (1974), pues de lo contrario su actuación sería ultra vires y, como consecuencia, nula. Fuertes y Otros v. A.R.P.E., 134 D.P.R. 947 (1993). En ausencia de evidencia de que el organismo administrativo actuó arbitrariamente, este Tribunal no sustituirá su criterio por el de la agencia. M & V Orthodontics v. Negociado de Seguridad de Empleo, 115 DPR 183, 189 (1994).
La revisión judicial se limita a determinar si hay evidencia sustancial en el expediente para sostener la conclusión de la agencia o si ésta actuó de manera arbitraria, caprichosa o ilegal o tan irrazonablemente que su actuación constituyó un abuso de discreción. Mun. de San Juan v. J.C.A., 149 D.P.R. 263, 280 (1999); Reyes Salcedo v. Policía de P.R., 143 D.P.R. 85, 94 (1997); Fuertes y otros v. A.R.P.E., supra. Cuando se impugnan *1090 decisiones de los organismos administrativos, los tribunales deben indagar sobre la razonabilidad de las mismas y no deben sustituirlas por su propio criterio. Sólo podrá revocarse o modificarse la actuación administrativa cuando se pruebe que la actuación impugnada fue arbitraria, ilegal o irrazonable, o cuando no exista en la totalidad del expediente prueba sustancial que sostenga las determinaciones efectuadas por la agencia. Misión Ind. P.R. v. J.P. y A.A.A., 142 D.P.R. 656, 674 (1997). En ausencia de tales consideraciones, la actuación administrativa deberá ser confirmada. Id.
En cuanto a las conclusiones de derecho, la LPAU estatuye que éstas pueden ser revisadas en todos sus aspectos por el tribunal. No obstante, es norma reiterada que los tribunales deben concederle gran peso y deferencia a las interpretaciones que los organismos administrativos realizan de las leyes y reglamentos que administran. Los tribunales no pueden descartar libremente la interpretación de la agencia y sus conclusiones y así sustituir el criterio de éstas por el propio. Hernández v. Centro Unido, supra; P.C.M.E. v. J.C.A., 166 D.P.R. _, 2006 J.T.S. 7.
Insistimos, los tribunales deben concederle deferencia a la interpretación de la ley o reglamento que realiza determinada agencia administrativa si ésta es razonable, aunque no sea la única interpretación razonable, Hernández v. Centro Unido, 168 D.P.R. _, 2006 JTS 149. Es norma reiterada que los tribunales únicamente podrán sustituir el criterio de la agencia por el suyo cuando no encuentren una base racional para explicar la determinación administrativa. Hernández v. Centro Unido, supra. Ello se debe, a que por tratarse de áreas del derecho que manejan a diario, las agencias desarrollan un conocimiento especializado al respecto que no debe ser menospreciado. Rivera Rentas v. A & C Development, 144 D.P.R. 450 (1997).
IV
La contención del Departamento de Educación es que erró el Juez Administrativo que atendió el caso de autos al determinar que procedía el reembolso a la familia de Génesis por los servicios educativos que ésta recibió en la escuela privada CAPRI. Dicho departamento basa su reclamo en tres razones, a saber, que el Juez Administrativo no consideró que la decisión de ubicar a Génesis en una escuela privada fue tomada de manera unilateral por la señora Torres; que éste consideró una evaluación sicológica y el testimonio de la Dra. López Laureano sin que los mismos hubiesen sido discutidos y analizados por el COMPU, y que no consideró que la señora Torres no había entregado al Departamento de Educación las facturas sobre los gastos incurridos por concepto de los servicios educativos privados. No nos convence.
Un estudio ponderado del caso ante nuestra consideración nos lleva forzosamente a coincidir con la determinación del Juez Administrativo y concluir que el Departamento de Educación no cumplió con su obligación de proveerle con prontitud a la menor una educación pública, gratuita y adecuada, conforme se requiere por la legislación federal aplicable, lo que justifica el reembolso de los gastos incurridos en la institución privada por su familia. Es ésta la cuestión neurálgica de este caso. Veamos.
Surge de los autos que Génesis estuvo desde séptimo grado a noveno grado en una escuela del Departamento de Educación en la que no se logró un cambio favorable en su conducta ni un aprovechamiento académico adecuado. Observamos que Génesis estuvo asignada a un salón regular con salón recurso y que durante su ubicación en dicho plantel sus problemas de comportamiento empeoraron, por lo que fue atendida por especialistas que recomendaron un cambio de escuela. La señora Torres reiteradamente comunicaba sus preocupaciones sobre las deficiencias de la educación que se le estaba proveyendo a Génesis. Así surge que se reunió en varias ocasiones con el COMPU, sin llegar a soluciones satisfactorias a las necesidades de Génesis señaladas incluso por especialistas recursos del Departamento de Educación, a saber el trabajador social de la escuela.
Lo anterior la llevó a presentar la querella que origina el caso de autos y a solicitar la compra de servicios educativos apropiados para atender las necesidades particulares de Génesis. En tanto, Génesis finalizó su *1091 noveno grado, sin una ubicación escolar para cursar el décimo grado. Es decir, la señora Torres no removió a Génesis de la escuela para, unilateralmente, colocarla en una escuela privada. Génesis había culminado el noveno grado, y el Departamento de Educación no le había provisto ubicación escolar para cursar el décimo grado. A mitad del primer semestre del año escolar 2008-2009 y ante el incumplimiento del Departamento de Educación de ofrecer una educación pública gratuita y apropiada, la familia de Génesis, diligente y responsablemente, la matriculan en una institución que le brindó los servicios y beneficios educativos significativos a que Génesis tiene derecho.
Como indicáramos, iniciado el procedimiento de querella, hubo varias reuniones con el COMPU que resultaron en dos alternativas propuestas por el Departamento de Educación, a saber, la Escuela Vocacional, y en segundo lugar, la Escuela Luis Muñoz Iglesias. Estas opciones fueron rechazadas por la señora Torres, toda vez que no respondían a las necesidades de Génesis según las recomendaciones de los especialistas que la atendían, incluyendo a trabajadores sociales del Departamento de Educación. Vea, sobre este particular, lo resuelto en Florence County Sch. Dist. Four v. Carter, supra. Por un lado, la alternativa de la Escuela Vocacional obviaba que según los especialistas que la trataron, Génesis tiene el potencial de alcanzar estudios universitarios. Por otro lado, la Escuela Muñoz Iglesias no satisfacía la necesidad de atención individualizada que Génesis requiere, pues la colocaría en un salón regular con grupos grandes de estudiantes. Esta alternativa era igual a la Escuela Juan D. Stubbe, es decir, un salón regular en el cual Génesis no tuvo un rendimiento satisfactorio y por lo cual se recomendó un cambio. (Vea Resolución recurrida sobre recomendaciones de la Dra. López Laureano.) Luego de esto, y conociendo que Génesis carecía de una ubicación escolar, el Departamento de Educación no ofreció otra alternativa.
Los incisos (iii) y (iv) de la Ley IDEA contienen disposiciones que matizan la facultad del tribunal o juez administrativo para determinar las ocasiones en que puede denegar o reducir el importe del reembolso. El Departamento de Educación se basa en el inciso (i) (bb) para su contención. [1] No obstante, surge claramente de lo reseñado que no tiene razón.
El expediente refleja que Génesis fue evaluada por el COMPU y que esta entidad estuvo informada de la posición de la señora Torres y la necesidad de comprar servicios privados de educación. La señora Torres expresó su insatisfacción con las alternativas propuestas, consignó por escrito su inconformidad y ante la falta de alternativas de parte del Departamento de Educación, tomó su decisión de ubicar a Génesis en una institución privada. Ante todos estos procesos (que tomaron varios meses), nos resulta irrazonable e insostenible la contención del Departamento de Educación de que el reembolso de los gastos incurridos por la familia de Génesis en CAPRI se declare improcedente por no habérsele notificado con anticipación la matrícula de ésta en dicha institución. Más aún, cuando, ante la imposibilidad de matricular la joven en la escuela privada acordada, IMEI, la señora Torres presentó una moción en septiembre de 2008 en la que se aludía a la compra de servicios en CAPRI, y desde el 2007 había informado su interés en la compra de servicios privados. (Véase anejo 9, apéndice de la recurrida).
Contiende además el Departamento de Educación que la evaluación sicológica efectuada por la Dra. López Laureano no fue presentada al COMPU para estudio. Su aseveración no nos mueve a intervenir con la determinación del Juez Administrativo. Por un lado, debemos aclarar que contrario a lo indicado por el Departamento de Educación, la evaluación sicológica realizada por la Dra. López Laureano no fue el documento presentado en la vista del 31 de octubre de 2008. La evaluación sicológica había sido presentada en la vista del 8 de agosto de 2008, durante la cual el Departamento de Educación avaló la ubicación de Génesis en la institución privada IMEI. Durante la vista del 31 de octubre de 2008, la Dra. López Laureano presentó su testimonio y una evaluación educativa que no fueron objetadas por el Departamento de Educación. Este además tuvo la oportunidad de contrainterrogar a la sicóloga. Por tanto, en esta etapa, reclamar que el COMPU debió tener oportunidad de estudiar las evaluaciones realizadas por la Dra. López Laureano para determinar la ubicación apropiada para Génesis es contrario a la legislación que rige estos procedimientos. Más aún, cuando *1092 como vimos, el COMPU tuvo amplia oportunidad de descargar adecuadamente su función y proveer a Génesis una alternativa apropiada.
El COMPU conocía las necesidades y condiciones de Génesis e incumplió su obligación de identificar y ofrecer una alternativa de educación pública adecuada con prontitud. Ello justifica el reembolso de los gastos incurridos por su familia para brindarle a Génesis la educación que ella ameritaba. Como vimos al discutir el derecho aplicable: “If the parents of a child with a disability, who previously received special education and related services under the authority of a public agency, enroll the child in a private elementary or secondary school without the consent of or referral by the public agency, a court or a hearing officer may require the agency to reimburse the parents for the cost of that enrollment if the court or hearing officer finds that the agency had not made a free appropiate public education available to the child in a timely manner prior to that enrollment."20 U.S.C.A. sec. 1412(a)(10)(C). (Énfasis nuestro).).
Además, el Juez Administrativo razonablemente concluyó que CAPRI es una ubicación apropiada que le brinda un beneficio educativo significativo a Génesis. No está en controversia que desde que ingresó a esa institución se adaptó favorablemente. Resulta razonable concluir que allí se le comenzaron a brindar a la estudiante los beneficios educacionales necesarios. En estas circunstancias, el remedio apropiado bajo las disposiciones citadas de la Ley IDEA y su reglamentación era comprar los servicios en el sector privado y rembolsar los gastos incurridos por la madre en la institución privada. Por consiguiente, las conclusiones del Juez Administrativo son cónsonas con el propósito de dicha legislación y no son arbitrarias, ilegales o irrazonables, por lo que debemos sostenerlas.
Por último, alegó el Departamento de Educación que no podía rembolsar unos gastos de los cuales la señora Torres no le había entregado factura alguna. Surge de los autos que el 26 de noviembre de 2008, la señora Torres presentó al Departamento de Educación una comunicación en la que informó sobre la determinación del Juez Administrativo e incluyó una certificación de pago correspondientes a los meses de octubre y noviembre preparada por CAPRI. De igual forma le entregó los recibos de compra de los libros necesarios. Contrario a la contención del Departamento de Educación, esto hace la orden del Juez Administrativo ejecutable.
En conclusión, no se cometieron los errores señalados. Nada de lo alegado por el Departamento de Educación nos mueve a negarle la deferencia debida a la razonable y correcta determinación administrativa emitida por el Juez Administrativo.
V
De conformidad con lo antes expresado, se confirma la Resolución recurrida. Se le ordena al Departamento de Educación que cumpla inmediatamente con la Resolución emitida el 21 de noviembre de 2008. Se declaran no ha lugar la Moción en Auxilio de Jurisdicción y la Moción Urgente en Solicitud de Remedio, presentadas por el Estado Libre Asociado, Departamento de Educación.
Notifíquese inmediatamente.
Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.
Leda. María Elena Pérez Ortiz Secretaria del Tribunal de Apelaciones
ESCOLIO 2009 DTA 58

1. El inciso (iii) autoriza al tribunal o juez administrativo a reducir o denegar el reembolso: inciso (i) (aa), si en la más reciente reunión para discutir el Plan de Educación Individualizada (PEI), los padres no informaron a la *1093 agenda su inconformidad con el plan propuesto y su determinación de matricular al estudiante en una institución privada; (i) (bb), si diez días laborables antes de matricular al estudiante en una institución privada, los padres no notificaron por escrito a la agencia su inconformidad con la ubicación propuesta y su decisión de matricular al niño en una escuela privada; (ii) si con anterioridad a la remoción del estudiante de la escuela pública, la agencia notificó a los padres que el niño sería evaluado, pero los padres no permitieron que dicha evaluación se realizara, y (iii) si un tribunal determina que la actuación de los padres fue irrazonable, 20 U.S.C. 1412 (a) (10) (C) (iii).